# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| DEMOSTHENESE ANTWYAN WESLEY, ) | CASE NO. 7:19CV00195 |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | |
| OFFICER TRAVIS FRITZGES, <u>ET</u> <u>AL.</u>, ) | By: Hon. Glen E. Conrad |
| ) | Senior United States District Judge |
| **Defendants.** ) | |

Plaintiff Demosthenese Antwyan Wesley, a former Virginia inmate proceeding <u>pro se</u>,[1] filed this civil rights action pursuant to 42 U.S.C. § 1983, complaining that jail officials used excessive force against him, in violation of his Eighth Amendment rights. After review of the record, the court concludes that the defendants are entitled to summary judgment on the ground that Wesley failed to exhaust available administrative remedies before filing suit.

I.

In July of 2018, Wesley was confined at the Northwestern Regional Adult Detention Center ("NRADC") in Winchester, Virginia. On July 11, 2018, he refused to comply with officers' orders to be handcuffed and pack up his property.[2] A lieutenant "warned of consequences" as she left the area. Compl. 3, ECF No. 1. Wesley packed his things and placed them on his bunk. The lieutenant returned with staff and sprayed pepper spray into Wesley's cell. In response, Wesley "immediately layed [sic] on the floor crossed [his] legs and placed [his] hands behind [his] back." <u>Id.</u> While he was "prone," staff rushed into the cell, used force

---

[1] Wesley filed this § 1983 action in February 2019 while incarcerated, but he notified the court in September 2019 that he had been released.

[2] This sequence of events, taken from the complaint and attachments, is stated in the light most favorable to Wesley and is not intended to make any finding of facts.

to place him in handcuffs, and removed him from the cell. Id. Wesley "blacked out" and came to in the restraint chair. Id.

In Wesley's § 1983 complaint, he alleges that:

(1) During a cell extraction Officer Travis Fritzges assaulted me while I lay prone giving no resistance. Also sexually assaulting me probing my anal area with his finger with my jumpsuit on saying "We run the shit bitch" in an aggressive manner.

(2) During a cell extraction Sergeant Jason Harding brutally assaulted me while I lay prone giving no resistance causing facial bruising, lacerations, and chipping my front tooth beyond recognition.

Id. at 2. As relief, Wesley seeks monetary damages.[3]

The defendants have filed a motion for summary judgment, arguing that Wesley's claims should be dismissed because he failed to exhaust administrative remedies before filing this lawsuit. Wesley has responded,[4] making the motion ripe for disposition.

II.

An award of summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For a party's evidence to raise a genuine issue of material fact sufficient to avoid summary judgment, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In making this determination, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party." Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994). When a motion for summary judgment is properly supported by affidavits, the

---

[3] Wesley also seeks to have the defendants "held accountable for their actions, [his] tooth fixed therapeutic assistance," and to have his parental rights restored. Compl. 2, ECF No. 1. He is advised that these desired outcomes are not available forms of relief in a § 1983 action.

[4] Wesley's response to the defendants' motion is not signed under penalty of perjury and does not include a properly verified affidavit or declaration. Thus, the defendants' evidence about the procedures and Wesley's use of them is undisputed.

2

nonmoving party may not rest on the mere allegations; rather, he must respond by affidavits or specific facts that support a finding in his favor. See Anderson, 477 U.S. at 256-57.

Under the Prison Litigation Reform Act ("PLRA"), a prisoner cannot bring a civil action concerning prison conditions until he has first exhausted available administrative remedies. 42 U.S.C. § 1997e(a).[5] This exhaustion requirement is "mandatory," Ross v. Blake, 136 S. Ct. 1850, 1856 (2016), and "applies to all inmate suits about prison life." Porter v. Nussle, 534 U.S. 516, 532 (2002). To comply with § 1997e(a), an inmate must follow each step of the established grievance procedure that the facility provides to prisoners and meet all deadlines within that procedure. See Woodford v. Ngo, 548 U.S. 81, 90-94 (2006). Even if the particular form of relief the inmate desires is not available under the facility's administrative procedure, the inmate must, nevertheless, properly exhaust all available remedies under that procedure before bringing a civil action in this court. Porter, 534 U.S. at 524.

The defendants bear the burden of proving the affirmative defense that Wesley failed to exhaust available administrative remedies regarding his claims before filing suit. Jones v. Bock, 549 U.S. 199, 212 (2007). Once they have done so, Wesley may yet escape summary judgment under § 1997e(a) if he states facts showing that the remedies under the established grievance procedure were not "available" to him. Ross, 136 S. Ct. at 1859 (noting that circumstances making prison grievance procedures unavailable "will not often arise"). Generally, "an administrative remedy is not considered to have been available if a prisoner, through no fault of

---

[5] The PLRA's exhaustion requirement in 42 U.S.C. § 1997e(a) applies to Wesley's lawsuit, despite the fact that he was released from prison during that lawsuit's pendency. "Although the Fourth Circuit has not yet considered this question, other circuits of the Court of Appeals have held that the administrative exhaustion requirement under the PLRA continues to apply when a prisoner is released while his lawsuit still is pending in federal court." Chase v. Peay, 286 F. Supp. 2d 523, 527 (D. Md. 2003), aff'd, 98 F. App'x 253 (4th Cir. 2004). This rule is consistent with the plain language of § 1997e(a), which focuses on the time that a lawsuit is "brought" in federal court. Id. at 528. Thus, the applicability of the exhaustion requirement is determined at the time of filing. Id. at 528. Wesley filed this suit in February 2019, while he was still incarcerated.

his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008).

In support of the defendants' motion, they offer undisputed evidence that the NRADC has an established Inmate Grievance Procedure that provides inmates the opportunity to formally submit complaints regarding their treatment or NRADC policy. When an inmate is booked into NRADC, he receives a copy of the inmate handbook, which explains the grievance procedure. He is also verbally oriented to the grievance procedure.

A grievance must be submitted within thirty (30) days of the incident or act being grieved. An untimely filed grievance will be returned without action. The inmate must first attempt to resolve his complaint informally by submitting an Inmate Request Form to the appropriate Housing Unit Officer for resolution. When the response provided to an Inmate Request Form does not resolve the inmate's inquiry, the Housing Unit Officer will issue a grievance form to the inmate to complete. A copy of the answered Inmate Request Form must accompany the grievance form. Officials should respond to a grievance form in writing within nine (9) working days from the date of receipt.

If an inmate is dissatisfied with the response to a grievance, he has three (3) days after receipt of the Grievance response to appeal the decision. Inmate appeals will be answered within five (5) working days. A copy of the original grievance form must accompany the appeal, and appeal decisions are final. An inmate's release from incarceration will not stop the grievance process unless the inmate specifically withdraws his grievance. An inmate must comply with each step of this process to exhaust his available administrative remedies at NRADC.

Wesley was booked into NRADC on April 4, 2018. During the booking process, he was oriented to the Inmate Grievance Procedure and received a copy of the Inmate Handbook.

NRADC Superintendent Whitley has reviewed the Master Grievance Log for 2018 and found no evidence that Wesley filed a grievance concerning the alleged assault by jail officers that allegedly occurred on or about July 11, 2018 during a cell extraction. Superintendent Whitley confirmed that Wesley's failure to file a grievance and to pursue the other steps of the NRADC Inmate Grievance Procedure constituted a failure to exhaust his administrative remedies.

> In response to the defendants' motion, Wesley alleges that
>
> he verbally requested a grievance form directly from I[n]vestigator Clark, NRADC Investigator, and in response was given a statement form and told it was what [he] needed to complete.[6] The form was completed and given on duty staff members who assured Wesley the process would be handled in the same order an [sic] any incident procedure.
>
> As far as Wesley is concerned the[re] was no follow up investigation given the many request forms response indicating the Investigator of NRADC was looking into the matter.

Resp. 2, ECF No. 21. Wesley also alleges that he wrote request forms to jail officials and letters about the July 11, 2018 incident to his legal advisor, judges, a newspaper, the director of the Prison Rape Elimination Act, and others. He also attempted to file criminal complaints against the perpetrators in state court. Based on his alleged efforts, Wesley contends that "he attempted to follow the proper procedure of complaint through administration but was ignored and neglected for months." Id. at 5.

Wesley provides no evidence to refute the defendants' evidence that he did not complete the steps of the NRADC's established grievance procedure to present officials with his complaint against the defendants. He claims to have written many request forms, letters, and criminal complaints about the incident and other dissatisfactions about events at NRADC, apparently believing that these communications should substitute for filing a grievance. He is mistaken.

---

[6] Wesley submits a copy of the NRADC "Statement Form" that he completed, Resp. 19, ECF No. 21, and many other letters and statement forms that he allegedly submitted while at NRADC.

5

Section 1997e(a) does not include an exception allowing inmates to comply with the exhaustion requirement by other means of their choosing, such as letter writing campaigns or cooperating in an institutional investigation. Ross, 136 S. Ct. at 1856-58 (rejecting theory that inmate's mistaken reliance on internal investigation instead of filing grievance did not excuse his failure to properly utilize all levels of prison's established grievance procedure). Wesley does not allege or provide evidence that he attached one of his many alleged request forms to a grievance form and properly filed it within thirty days after the July 11, 2018 incident, as required to initiate the NRADC grievance procedure. Wesley also does not allege that grievance forms were unavailable to him in any respect.

Based on the foregoing, the court concludes that Wesley has presented no fact on which he could persuade a fact finder that he exhausted the established administrative remedies before filing this lawsuit as required under § 1997e(a) or that those remedies were unavailable to him. Moreover, the facility's procedural deadline for him to file a grievance and subsequent appeals about his complaint has long since passed. Accordingly, the court concludes that the defendants are entitled to summary judgment under § 1997e(a) and that Wesley's claims against them must be dismissed with prejudice. See, e.g., Berry v. Kerik, 366 F.3d 85, 88 (2d Cir. 2004) (holding that "where exhaustion was required but administrative remedies have become unavailable after the prisoner had ample opportunity to use them," dismissal under § 1997e(a) for failure to exhaust should be with prejudice). An appropriate order will issue this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff and to counsel of record for the defendants.

ENTER: This 15th day of November, 2019.

_____
Senior United States District Judge